IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

LAURENCE NILES,

    Plaintiff,

v.

WILLIAM RODMAN, M.D.;
and ASPEN VALLEY HOSPITAL DISTRICT
d/b/a ASPEN VALLEY HOSPITAL

    Defendants.

---

**PLAINTIFF'S COMPLAINT, JURY DEMAND, AND CERTIFICATE OF REVIEW**

---

Plaintiff, Laurence Niles, through his attorneys, Bogue, Paoli & Thomas, L.L.C. and Ogborn Mihm LLP, submits the following Complaint, Jury Demand, and Certificate of Review:

## I. CERTIFICATE OF REVIEW

Pursuant to C.R.S. § 13-20-602(3)(a), counsel certifies as follows:

1. Counsel has consulted with physicians, health care providers and health care administrators with expertise in the areas of the alleged conduct as set forth in Plaintiff's Complaint;

2. The physicians, health care providers and health care administrators who have been consulted have reviewed all known facts relevant to the allegations of conduct as complained of in Plaintiff's Complaint;

3. Based upon such facts, these physicians, health care providers and health care administrators have concluded that the filing of the claims against Defendants does not lack substantial justification within the meaning of C.R.S. § 13-17-102(4); and,

4. The physicians, health care providers and health care administrators who have reviewed all known facts relevant to the allegations of conduct as contained in Plaintiff's Complaint for Damages meet the requirements set forth in C.R.S. § 13-64-401.

## II. PARTIES AND JURISDICTION

5. This Honorable Court has jurisdiction as this is a diversity action filed under the provisions of 28 U.S.C. § 1332 by reason of the diversity of the citizenship of the parties and the amount in controversy. The Plaintiff is a citizen of California. The Defendants are citizens of Colorado or corporations incorporated under the law of Colorado with their principal places of business in Colorado. The amount in controversy, without interest and costs, exceeds $75,000.00.

6. Plaintiff, Laurence Niles, presently resides at the following address: 1172 Bienveneda Avenue, Pacific Palisaides, California 90272.

7. At all relevant times, Defendant, William Rodman, M.D. (hereinafter referred to as "Defendant Rodman"), was a physician licensed to practice medicine in the State of Colorado specializing in surgery.

8. Defendant, Aspen Valley Hospital District d/b/a Aspen Valley Hospital (hereinafter referred to as "Aspen Valley Hospital"), has its principal place of business at 0401 Castle Creek Road, Aspen, Colorado 81611.

9. Plaintiff fully complied with the provisions of C.R.S. § 24-10-109 and, specifically, gave timely notice pursuant to C.R.S. § 24-10-109 first on August 12, 2013.

10. Although Plaintiff does not believe that Defendant, William Rodman, M.D., was a public employee for purposes of the Colorado Governmental Immunity Act, C.R.S. § 24-10-101 *et seq.,* in an abundance of caution, notice was timely given pursuant to C.R.S. § 24-10-109 first on August 12, 2013.

11. The tortious conduct alleged herein occurred in Pitkin County, Colorado.

### III. REQUEST FOR PREFERENTIAL TRIAL SETTING PURSUANT TO C.R.S. § 13-1-129

12. As of the filing of this complaint, Mr. Niles is 79 years old (DOB: May 12, 1935). Plaintiff will be requesting that this Court move this matter expeditiously and will be requesting a preferential trial setting pursuant to C.R.S. § 13-1-129, given his age. The Defendants should ensure that prospective defense counsel have ample time available over the next six months to conduct discovery and try the case.

### IV. GENERAL ALLEGATIONS

13. Plaintiff incorporates paragraphs 1 through 12 herein by reference.

14. On February 17, 2013, Laurence Niles was brought to the Emergency Department at Aspen Valley Hospital via ambulance after sustaining a severe closed head injury with loss of consciousness and other traumatic injuries, including multiple rib fractures, as a result of a collision while skiing.

15. John Schultz, M.D. was the admitting physician in the Emergency Department during the February 17, 2013, admission to Aspen Valley Hospital for Laurence Niles, and the

clinical impression for Mr. Niles was noted to include closed head injury with subarachnoid hemorrhage.

16. On February 17, 2013, at approximately 12:45 p.m., a CT of the head without contrast was performed on Laurence Niles at Aspen Valley Hospital and interpreted by Scott Anderson, M.D. The impression of the CT included potential subarachnoid hemorrhage.

17. On February 17, 2013, at approximately 1:02 p.m., a CT of the chest with contrast was performed on Laurence Niles at Aspen Valley Hospital and interpreted by Steven Heiss, M.D. The impression of the CT included multiple rib fractures of the left-sided fifth through tenth ribs and a pneumothorax.

18. On February 17, 2013, at approximately 6:56 p.m., a second CT of the head without contrast was performed on Laurence Niles at Aspen Valley Hospital and interpreted by Peter Ricci, M.D. The impression of the CT included potential subarachnoid hemorrhage.

19. On February 18, 2013, at approximately 8:42 a.m., a third CT of the head without contrast was performed on Laurence Niles at Aspen Valley Hospital at approximately 12:45 p.m. and interpreted by Scott Anderson, M.D. The impression of the CT included potential subarachnoid hemorrhage.

20. On February 18, 2013, it was documented in Laurence Niles's medical record that he was admitted to Aspen Valley Hospital for a subarachnoid hemorrhage sustained in a skiing accident.

21. On February 18, 2013, a left paravertebral catheter was placed for pain control, and Mr. Niles subsequently had an increase in oxygen requirements.

22. On February 20, 2013, Defendant Rodman assumed responsibility for the care and treatment of Laurence Niles.

23. A decision was made by Defendant Rodman to keep Laurence Niles at Aspen Valley Hospital for further care and treatment rather than sending Mr. Niles to a medical facility that could provide a higher level of care.

24. Prior to Mr. Niles's admission to Aspen Valley Hospital in February 2013, Aspen Valley Hospital had an established pattern of failing to transfer trauma patients and, in particular, head trauma patients who required a higher level of care not provided by Aspen Valley Hospital to facilities that could offer that higher level of care.

25. On February 20, 2013, anticoagulation was started for Laurence Niles, including injections of Lovenox and the administration of Coumadin, despite Mr. Niles's suspected subarachnoid hemorrhage.

26. Pursuant to Defendant Rodman's physician orders, anticoagualtion treatments, including injections of Lovenox and the administration of Coumadin, were continued for Laurence Niles through February 22, 2013, despite Mr. Niles's suspected subarachnoid hemorrhage.

27. On February 23, 2013, at some time prior to 6:00 a.m., Laurence Niles developed severe weakness in his right leg and his right arm.

28. On February 23, 2013, a fourth CT of the head without contrast was performed on Laurence Niles at Aspen Valley Hospital at approximately 6:00 a.m. and interpreted by Kevin Johnson, M.D. The impression of the CT stated that Mr. Niles had an enlarging left front parietal hematoma 4.0 x 2.8 cm with local mass effect.

29. The head CT provided for Laurence Niles on February 23, 2013, was the first time that a head CT had been provided for Mr. Niles since February 18, 2013.

30. Defendant Rodman stated in Laurence Niles's medical record that "Our CAT scan was down" at Aspen Valley Hospital during the period of time between February 18, 2013, and February 23, 2013.

31. The CT scanner at Aspen Valley Hospital was, at times, not functioning properly during the period of time between February 18, 2013, and February 23, 2013.

32. The broken CT scanner at Aspen Valley Hospital was one of the causes of the failure to provide Laurence Niles with appropriate imaging studies during his February 2013, hospitalization, including serial head CTs.

33. During the February 2013, hospitalization, neither Laurence Niles nor his family were ever advised that Aspen Valley Hospital did not have a properly functioning CT scanner.

34. After Laurence Niles received the belated head CT on February 23, 2013 and it was determined that Mr. Niles was suffering an enlarging left front parietal hematoma, Mr. Niles was emergently transferred to St. Mary's Hospital & Medical Center in Grand Junction, Colorado, via St. Mary's CareFlight.

35. Laurence Niles sustained a severe brain injury as a result of the brain hemorrhage prior to his arrival at St. Mary's Hospital & Medical Center

36. Laurence Niles was admitted to St. Mary's Hospital & Medical Center on February 23, 2013, via the emergency department.

37. A stat CT of the head taken at St. Mary's Hospital & Medical Center on February 23, 2013, showed that Laurence Niles's brain hemorrhage continued to bleed and enlarge.

38. Healthcare providers at St. Mary's Hospital & Medical Center provided Laurence Niles with Factor VII to reverse the anticoagulated state caused by the Defendants.

39. Healthcare providers at St. Mary's Hospital & Medical Center provided Laurence Niles with an Inferior Vena Cava filter.

40. Laurence Niles was discharged from St. Mary's Hospital & Medical Center on March 7, 2013, with a diagnosis of intracranial hemorrhage.

41. Following the hospitalizations, Laurence Niles has continued to suffer a severe brain injury, severe cognitive deficits, severe right sided deficits due to brain injury related to his intracranial hemorrhage.

42. While under the care and treatment of each of the Defendants, Plaintiff, Laurence Niles, was cared for and treated in a negligent fashion. As a result of the brain injury, Mr. Niles, among other things, requires round-the-clock medical care.

43. Laurence Niles's brain injury is permanent and irreversible.

## IV.  FIRST CLAIM FOR RELIEF
### (Medical Negligence – William Rodman, M.D.)

44. Plaintiff incorporates Paragraphs 1 through 43 herein by reference.

45. Defendant Rodman was negligent in his care and treatment of Laurence Niles.

46. With respect to his care and treatment of Laurence Niles, Defendant Rodman owed a duty to exercise that degree of care, skill, caution, diligence and foresight exercised by and expected of physicians in similar situations.

47. Defendant Rodman deviated from the standard of care and was negligent in his care and treatment of Laurence Niles by:

    a. Failing to transfer Laurence Niles to a medical facility with the appropriate capabilities following his evaluations at Aspen Valley Hospital;

    b. Failing to ensure that Laurence Niles received follow up head CTs between February 18, 2013, and February 23, 2013;

    c. Failing to ensure that Laurence Niles received appropriate neurological evaluations during his hospitalization;

    d. Anticoagulating Laurence Niles in the face of a subarachnoid hemorrhage;

    e. Failing to take adequate safeguards after the anticoagulation of Laurence Niles;

    f. Failing to order a follow up head CT promptly;

    g. Failing to recognize the urgent nature of Laurence Niles's condition after evaluations at Aspen Valley Hospital;

    h. Failing to advise Laurence Niles and his family that there were problems with the CT scanner at Aspen Valley Hospital;

    i. Failing to advise Laurence Niles and his family of the option of transferring Mr. Niles to a different medical facility than Aspen Valley Hospital; and

    j. Failing to prevent, timely diagnose and effectively treat Mr. Niles's medical conditions, including, but not limited to, Mr. Niles subarachnoid hemorrhage.

48.    As a direct and proximate result of the negligence of Defendant Rodman, Laurence Niles has suffered significant and permanent injuries and damages including permanent physical and cognitive impairment and disfigurement, spasms, emotional stress, mental anguish and physical suffering. Mr. Niles's injuries require around the clock medical care. His injuries have been and will continue to be disabling and humiliating. The injuries he has suffered are permanent. Plaintiff, Laurence Niles, has been forced to spend monies and will spend monies in the future for medicine, doctors' fees, prescriptions, hospital care, x-rays, physical therapy, medical procedures, rehabilitation, educational care and long-term care and

8

assistance. Plaintiff, Laurence Niles, has suffered a loss of ability to enjoy a full useful and normal life. Plaintiff, Laurence Niles, has suffered a loss of home and family care services past and future. All as a direct and proximate result of the negligence of Defendant Rodman.

49. Plaintiff, Laurence Niles, will suffer future economic damages as a result of brain injury and dysfunction, impairment of motor and speech, physical impairment, physical disfigurement, emotional distress, mental anguish, and physical suffering. Laurence Niles's injuries require that he receive around the clock medical care. Laurence Niles's injuries have been and will continue to be permanent, disabling and humiliating. Laurence Niles has suffered and will continue to suffer economic damages for the extraordinary medical, psychological, life care, and essential service expenses associated with his injuries, as well as non-economic damages for emotional distress, anguish, inconvenience, and impairment of quality of life.

50. As a direct and proximate result of the negligence of Defendant Rodman, Plaintiff, Laurence Niles, will suffer future economic damages, has suffered past economic damages, will suffer future non-economic damages, has suffered past non-economic damages, will suffer future disfigurement and physical impairment damages, and has suffered past disfigurement and physical impairment damages. Plaintiff, Laurence Niles, will make a claim for all costs and interest allowable under applicable law.

### V. SECOND CLAIM FOR RELIEF
(Medical Negligence – Aspen Valley Hospital District d/b/a Aspen Valley Hospital)

51. Plaintiff incorporates Paragraphs 1 through 50 herein by reference.

52. On or about February 17, 2013, Plaintiff, Laurence Niles, was placed under the care and treatment of Aspen Valley Hospital for the care and treatment of his medical condition.

53. At all relevant times, Aspen Valley Hospital had nursing personnel and hospital administrators who were employees, agents, officers, shareholders, or partners of Aspen Valley Hospital who were acting within the scope of their employment or within their authority for Aspen Valley Hospital.

54. Aspen Valley Hospital is responsible for the acts or omissions of its employees, agents, officers, directors, shareholders and/or partners including the nursing personnel and hospital administrators who were involved in providing services in connection with caring for Plaintiff, Laurence Niles, during his February 17, 2013, admission.

55. Aspen Valley Hospital, acting by and through its employees, agents, partners, officers and directors including, but not limited to, hospital administrators, registered nurses, certified nursing assistants, nurse practitioners, licensed practical nurses and other employees, all of whom were acting within the course and scope of their employment or within their authority as agents and employees of Aspen Valley Hospital, were negligent in their care and treatment of Plaintiff, Laurence Niles, including, but not limited to, the following:

    a. Failing to properly perform appropriate nursing assessments on Laurence Niles;

    b. Failing to recognize the urgent medical condition of Laurence Niles;

    c. Failing to follow applicable policies and procedures;

    d. Failing to activate the chain of command;

    e. Failing to take appropriate vital signs for Laurence Niles;

    f. Failing to communicate the urgent condition of Laurence Niles;

    g. Failing to ensure that Laurence Niles was transferred in a timely fashion to a hospital with the appropriate medical capabilities;

    h. Failing to ensure that Laurence Niles received the appropriate imaging studies;

    i. Operating a hospital that accepted patients with suspected subarachnoid hemorrhages without the ability to perform critical medical procedures, including but not limited to, head CT scans and the placement of IVF filters, and without the ability to provide adequate coverage by neurosurgeons;

    j. Failing to develop and implement adequate policies and procedures and failing to ensure that the hospital staff was following policies and procedures;

    k. Failing to adequately hire, train and supervise hospital staff;

    l. Failing to have in place an adequately safe system in the event that the hospital lost the capability of performing CT scans;

    m. Failing to have a system in place to ensure that Laurence Niles received follow up head CTs between February 18, 2013, and February 23, 2013;

    n. Failing to adequately communicate with its medical staff about the malfunctioning CT scanner;

    o. Failing to ensure that Laurence Niles received appropriate neurological evaluations during his hospitalization;

    p. Failing to ensure that it offered medical services commensurate with the needs of its patient population;

    q. Failing to advise Laurence Niles and his family that there were problems with the CT scanner at Aspen Valley Hospital;

    r. Failing to advise Laurence Niles and his family of the option of transferring Mr. Niles to a different medical facility than Aspen Valley Hospital; and

    s. Failing to have a system in place to prevent, timely diagnose and effectively treat Mr. Niles's medical conditions, including, but not limited to, Mr. Niles's subarachnoid hemorrhage.

56. As a direct and proximate result of the negligence of Defendant, Aspen Valley Hospital, by and through its duly authorized agents and employees, Laurence Niles has suffered significant and permanent injuries and damages including permanent physical and cognitive

impairment and disfigurement, spasms, emotional stress, mental anguish and physical suffering. Mr. Niles's injuries require around the clock medical care. His injuries have been and will continue to be disabling and humiliating. The injuries he has suffered are permanent. Plaintiff, Laurence Niles, has been forced to spend monies and will spend monies in the future for medicine, doctors' fees, prescriptions, hospital care, x-rays, physical therapy, medical procedures, rehabilitation, educational care and long-term care and assistance. Plaintiff, Laurence Niles, has suffered a loss of ability to enjoy a full useful and normal life. Plaintiff, Laurence Niles, has suffered a loss of home and family care services past and future. All as a direct and proximate result of the negligence of Defendant, Aspen Valley Hospital.

57.     Plaintiff, Laurence Niles, will suffer future economic damages as a result of brain injury and dysfunction, impairment of motor and speech, physical impairment, physical disfigurement, emotional distress, mental anguish, and physical suffering. Laurence Niles's injuries require that he receive around the clock medical care. Laurence Niles's injuries have been and will continue to be permanent, disabling and humiliating. Laurence Niles has suffered and will continue to suffer economic damages for the extraordinary medical, psychological, life care, and essential service expenses associated with his injuries, as well as non-economic damages for emotional distress, anguish, inconvenience, and impairment of quality of life.

58.     As a direct and proximate result of the negligence of Defendant, Aspen Valley Hospital, Plaintiff, Laurence Niles, will suffer future economic damages, has suffered past economic damages, will suffer future non-economic damages, has suffered past non-economic damages, will suffer future disfigurement and physical impairment damages, and has suffered

past disfigurement and physical impairment damages. Plaintiff, Laurence Niles, will make a claim for all costs and interest allowable under applicable law.

WHEREFORE, Plaintiff, Laurence Niles, respectfully prays for compensatory damages in his favor and against Defendants in an amount to be determined by the trier of fact, interest from the date of filing, pre-judgment and post-judgment interest as allowed by law, witness fees, filing fees, deposition expenses, attorneys fees, and for such other and further relief as the Court may deem appropriate and just including all costs.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

Respectfully submitted this 12th day of February, 2015.

*s/ Isobel S. Thomas*
Isobel S. Thomas
Matthew R. Laird
BOGUE, PAOLI & THOMAS, L.L.C.
1401 17th Street, Suite 320
Denver, Colorado 80202
Telephone:   (303) 382-1990
Facsimile:    (303) 382-1982
ithomas@bogue-paoli.com
mlaird@bogue-paoli.com

-and-

Peter McClenahan
OGBORN MIHM LLP
1700 Broadway, Suite 1900
Denver, Colorado 80202
Telephone:   (303) 592-5900
Facsimile:    (303) 592-5910
Peter.McClenahan@ogbornmihm.com
*Attorneys for Plaintiff*

**Plaintiff's Address:**
1172 Bienveneda Avenue
Pacific Palisaides, California 90272