IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00296-RM-MJW

LAURENCE NILES,

Plaintiff,

v.

WILLIAM RODMAN, M.D.,

Defendant.

**MINUTE ORDER**

**Entered by Magistrate Judge Michael J. Watanabe**

It is hereby ORDERED that the Docket Nos. 58 and 59 are DENIED, adopting the Special Master's Report No. 1 Regarding Document Review for Redactions (attached to this Minute Order).

Date: February 18, 2016

# IN THE DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00296-RM-MJW

Laurence Niles
    Plaintiff
vs.

William Rodman, M.D.
    Defendant

---

## SPECIAL MASTER REPORT NO. 1
## REGARDING DOCUMENT REVIEW FOR REDACTIONS

---

The undersigned was appointed as a Special Master, pursuant to Fed. R. Civ. P. 53 and D.C.COLO.LCivR 30.3(b) and 72.1(b)(10), by Magistrate Judge Michael J. Watanabe to, among other things, review several thousand pages of medical records, many of which contained redactions made by Plaintiff. The Special Master has completed his review of the records, heard arguments by counsel, reviewed pertinent pleadings, and hereby finds and concludes as follows:

I.    Background:

Plaintiff, an 80 year old man, filed a medical malpractice suit against Defendant Rodman and Aspen Valley Hospital District. Aspen Valley has been dismissed as a defendant and is not subject to this Order. During the course of discovery, Plaintiff produced the redacted records along with privilege logs for all records. Defendant filed a Motion to Compel Un-Redacted Medical Bills and Medical Records, stating in essence, "Plaintiff's disclosure of his medical bills and records has been evasive and incomplete, as he has heavily redacted all disclosed documents without a legitimate basis for his claims of privilege." (Defendant's Motion, Docket no. 59, page 2, 3) Plaintiff countered by arguing, "The waiver of the [physician-patient] privilege implied when a patient brings a tort action for personal injury is limited to 'the cause and extent of the injuries and damages sustained as a result of the defendant's claimed negligence.' *Weil v. Dillon Companies, Inc.*, 109 P. 3d 127, 131 (Colo. 2005). 'This implied waiver, however, does not amount to a complete release of his prior medical history.' *Id.*" (Plaintiff's Response, Docket no. 64, page 11)

Plaintiff delivered to the Special Master seven volumes of unredacted records and seven volumes of the redacted records. The Special Master reviewed those records. In addition, the Special Master had a telephone conference (off the record) with all counsel about the redactions. Defendant agreed that any redaction of entries for things like social security numbers, personal financial information, and prior medical care for a hernia, a variety of skin rash and fungal issues, shoulder problems, eye problems, and dupuytrens disease were not being requested,

unless upon review, it appeared that any of those conditions could contribute to a shortened life-span or other significant health issues which might be relevant to the complaint in this case. Defendant argued that the Affidavit of Robert S. Schwartz, M.D. (one of Defendant's expert witnesses) showed why certain redactions needed to be reviewed.  Dr. Schwartz's affidavit states:

> The numerous redactions found in the medical records meaningfully inhibit my ability to fairly assess [Niles'] anticipated life expectancy.  Examples of the kinds of information which may have significant relevance to this issue, and about which I have seen clues but otherwise incomplete date in the records, relate to Mr. Niles' history of : 1) cardiac disease . . .; 2) epilepsy; 3) dysphagia . . .; 4) incontinence . . .; 4) [sic] history of urinary tract infections; 5) severe gait disturbance [and] it is also necessary to know the entire list of medications he has taken and is presently taking [and to know more about] prostate issues.

(attached as Exhibit 1 to Defendant's Supplement to Motion to Compel Unredacted Bills, pages 1 and 2)

Defendant did not believe the privilege log adequately disclosed the full nature of those medical problems and needed to be reviewed for discovery purposes.  Further, Plaintiff redacted information regarding depression issues and, although Plaintiff explained to the Special Master that Plaintiff was not claiming any psychological damages ("just 'garden-variety' pain and suffering"), Defendant believed such information could be discoverable if it showed early dementia, "white-matter" change, or other life-altering conditions.

## II.   Issues

There are two primary areas of concern by Defendant:  (1) redactions in the medical bills; and (2) redactions in the medical records.

### (1) Redactions in the medical bills:

The primary reason Plaintiff claims the redactions within the medical bills are proper is because they are irrelevant and inadmissible pursuant to the collateral source rule, citing *Wal-Mart v. Crossgrove*, 276 P.3d 562 (Colo. 2012), *Sunahara v. State Farm Mut. Auto. Ins. Co.,* 280 P.3d 649 (Colo. 2012), *Smith v. Jeppsen*, 277 P.3d 224 (Colo. 2012), and *Volunteers of America v. Gardenswartz*, 242 P.3d 1080 (Colo 2010).

Defendant argues that nothing in the cases cited by Plaintiff deal with the discoverability of medical bills, they only deal with the inadmissibility of evidence of the amount paid.  Further, Defendant contends he is entitled to the "bills paid" information in order to evaluate the reasonable value of the services, to assess the monetary claims brought against him, and to confirm that all charges and payments are related to the injuries at issue.  Finally, Defendant asserts that the Medicare "bills paid" have already been ordered disclosed by Judge Watanabe,

and the same rationale should be followed regarding the private insurance payments (*See*, Order, Docket no. 54, page 4)

The Special Master agrees with Defendant's position for the reasons stated by Defendant. Further, the Special Master concludes there is no prejudice to Plaintiff. Defendant, as a medical doctor, and his lawyers, who for years have practiced in the area of medical malpractice (including when the current collateral source rule was not in effect and "bills paid" was often entered into evidence), already are intimately familiar with the reductions made from the billing statement and as to what is ultimately paid. These reductions are no secret. It will be up to the trial court to determine whether any of the information gleaned from the medical bills is relevant and admissible. The Special Master further concludes that Plaintiff does not have a right of privacy interest in the amount paid and does not have a physician-patient privilege regarding how much was paid by the insurance company. The Special Master concludes that the "bills paid" are discoverable.

The Special Master instructs Plaintiff to "unredact" the redactions about payments made on the following pages as highlighted which are the portions of the records the Special Master concludes are discoverable:

- Vol. 1, Tab 2, AVH (B) pages 2, 3, 7, 8, 9, 10
- Vol. 5, Tab 8, PHIAM (B) page 1
- Vol. 5, Tab 10, CSMC (B) pages 9, 10
- Vol. 5, Tab 12, CPTPL (B) page 1
- Vol. 5, Tab 13, SMHMC (B) page 12
- Vol. 5, Tab 15, STAR (B) page 1
- Vol. 5, Tab 17, CHEAR (B) page 1
- Vol. 5, Tab 19, CCR (B) page 1
- Vol. 5, Tab 21, SJHS (B) pages 1-6, 8-10, 13
- Vol. 6, Tab 28, UCLA-PS (B) pages 1-19
- Vol. 6, Tab 29, SMHMC (B) pages 23,24
- Vol. 6, Tab 31, NRP (B) pages 1-5
- Vol. 6, Tab 32, UCLA (B) pages 1-3, 5
- Vol. 6, Tab 33, SMH ER PHY (B) page 1
- Vol. 6, Tab 34, UCLA SM (B) pages 4, 5, 8, 9, 12-14, 19-22
- Vol. 6, Tab 37, UFAI (B) page 1
- Vol. 6, Tab 40, SCMC Physicians (B) pages 1-12
- Vol. 6, Tab 43, LAFD (B) page 1
- Vol. 6, Tab 47, AMSE (B) pages 1, 2
- Vol. 6, Tab 48, SJMC Physicians (B) page 1
- Vol. 6, Tab 53, AMI (B) pages 1, 2
- Vol. 6, Tab 55, LWS (B) page 1
- Vol. 7, Tab 69, PCC (B) page 1
- Vol. 7, Tab 70, UCLA SM (B) pages 29, 30
- Vol. 7, Tab 71, DL (B) page 1
- Vol. 7, Tab 75, GSWC (B) pages 1-5

- Vol. 7, Tab 76, WCRA (B) pages 1-3

Regardless whether the Special Master found and highlighted every "bill paid" as shown by the "unredactions" above, Plaintiff is to produce unredacted pages showing amounts actually paid by both the private insurance carrier and Medicare whenever they appear in the records.

(2) Redactions in the medical records:

As a preliminary matter, the Special Master would note that the lion's share of the redactions, although proper, were not really necessary. Many entries for highly private matters (e.g. page after page of bowel and urinary function notations) were not redacted, yet less private issues (e.g. skin rashes and the medications required to treat them) were redacted. Ironically, many of the notations in the privilege log were more descriptive than what was redacted in the medical records. From a hypersensitive privacy viewpoint, Plaintiff was correct in making most, if not all, of the redactions; from a financial viewpoint, the redactions were a waste of time and money. Not only did someone have to painstakingly go through the records to make the redactions at great expense, the litigation over the redactions (including the need for the Special Master and the amount billed for the record review and this Order), has been expensive. Virtually nothing in all of the redactions would have been of interest to Defendant or useful by either side at trial. The Special Master also concludes that the privilege logs were sufficiently detailed to give notice to Defendant what was being redacted and why.

The Special Master instructs Plaintiff to "unredact" the redactions made on the following pages as highlighted which are the portions of the records the Special Master concludes are discoverable:

- Vol. 1, Tab 1, AVH pages 1, 33
- Vol. 1, Tab 5, SMHMC page 1
- Vol. 2, Tab 5, SMHMC pages 1753, 1763
- Vol. 4, Tab 6, UCLA pages 9, 96, 102, 199, 920, 926, 928, 930
- Vol. 5, Tab 11, CPTPL pages 1, 12
- Vol. 5, Tab 14, STAR page 14
- Vol. 6, Tab 41, UCLA page 1627
- Vol. 7, Tab 64, CVS (B) pages 8-11

The Special Master notes that there is, admittedly, some inconsistency in the "unredactions" in the bills and medical records. Many of the records were redundant and in the interest of saving the need to unredact the same information over and over, it is possible the information was only unredacted one, or perhaps a few, times.

    III.      Recommendations regarding the Motion for Sanctions (Docket no. 58) and Motion to Compel (Docket no. 59):

The court has instructed the Special Master to make recommendations regarding the sanctions sought in both the Motion for Sanctions (Docket no. 58) and the Motion to Compel (Docket no. 59). Both the Motion for Sanctions and the Motion to Compel seek, as a sanction, that the Court Order the production of unredacted medical bills and records. That sanction is no longer appropriate to consider given the production of the redacted bills and records sought, coupled with the Special Master's Order, above. The Motion for Sanctions also seeks a delay in the proceedings. Although it is the Special Master's understanding the parties may seek from the Court an extension of the discovery cut-off and the pre-trial conference (both requests the Special Master supports, as the parties have worked quite hard with the Special Master to schedule and reschedule depositions as needed to accommodate everyone's schedule), there is no reason to stay the case. Finally, both Motions seek attorney fees and costs.

    Fed. R. Civ. P. 37 provides:
(5) *Payment of Expenses; Protective Orders.*

    (A) *If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing).* If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:

    (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

    (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or

    (iii) other circumstances make an award of expenses unjust.

    (1) Motion for Sanctions (Docket no. 58):

The Special Master has reviewed the Motion for Sanctions (Docket no. 58), the Response (Docket no. 63), and the Reply (Docket no. 76). It appears to the Special Master that Plaintiff has not been overly dilatory in complying with prior Orders or the requirements of discovery. Obtaining out-of-state and out-of-date records can prove frustrating. As Defendant points out, Plaintiff could have reacted more quickly to the problems with getting the records. However, subpoenas and records depositions—mostly in California—would have caused a great expense. Defendant has not been prejudiced. The case itself has not been delayed and is still on track for trial. Any delay in potentially resolving this matter prejudices Plaintiff due to his age and ill health. It was of no benefit to Plaintiff to delay obtaining the medical records. Those issues

have now been resolved; depositions of the experts are set. The Special Master suggests that no sanction be imposed, at this time, as it would be unjust.

       (2) Motion to Compel (Docket no. 59):

The Special Master has reviewed Defendant's Motion to Compel (Docket no. 59), the Response (Docket no. 64), the Reply (Docket no. 77), and Defendant's Supplement to Motion to Compel (Docket no. 92). For the reasons stated above in Part II of this Order, the Special Master recommends that no sanction be enforced against Plaintiff for making the redactions. None of the "unredactions" of the medical records was substantive and the redactions regarding the discovery of "bills paid" was a rational and justified position to take until a ruling on whether such records were discoverable was made. The Special Master suggests any sanction, other than the appointment of and payment for the Special Master, would be unjust.

    IV.    Observation and comment:

The Special Master notes that the pleadings reviewed often contained finger-pointing, disparaging remarks, and some degree of unprofessional accusations against the other counsel. Such remarks and comments are not necessary between extremely well-qualified and experienced lawyers. The Special Master is quite confident that, with a little prodding, counsel will return to their professional selves and the case will proceed in an expeditious and efficient manner.

So ORDERED, February 18, 2016.        BY THE SPECIAL MASTER:

*Christopher C. Cross*

_____

Christopher C. Cross